Grace Licavoli v. Commissioner. Peter Licavoli v. Commissioner. Peter Licavoli and Grace Licavoli v. Commissioner.
Licavoli v. Commissioner
Docket Nos. 58055-58057.
United States Tax Court
1956 Tax Ct. Memo LEXIS 154; 15 T.C.M. (CCH) 862; June 14, 1956
John F. Noonan, Esq., for the petitioners. John T. Rogers, Esq., for the respondent. MURDOCK Memorandum to Accompany Order MURDOCK, Judge: The Commissioner, after deliberation, has refused to comply in these cases with orders of the Court that he set forth in greater detail in amended answers the facts upon which he relies to sustain his burden of proof on two fraud issues. The Commissioner, in his deficiency notices, determined increases in the net income over that reported for each year but gave no explanation of how he arrived at the amounts. He also determined additions for fraud for each year under section 293(b) based upon those increases. The petitioners assigned as error the action of the Commissioner in determining additions *155 for fraud and in failing to recognize that the statute of limitations barred assessment and collection at the time the deficiency notices were mailed. It would appear that the Commissioner was barred unless the returns were false and fraudulent. § 276(a). Congress has provided that the Commissioner has the burden of proof to establish fraud, and he recognizes that he has that burden on each of the two issues mentioned above. The rules of this Court require the Commissioner to state in his answer any facts upon which he relies to sustain any issue raised in a petition on which the burden of proof is placed upon the Commissioner by statute. Rule 14(b) and see Rule 17(c)(1). The Commissioner gave no intimation in his original answers of what facts he relied upon to prove fraud except the understatements indicated in his deficiency notices. The taxpayers then moved for an order requiring the Commissioner to make his answers more definite and certain as to the alleged understatements. The Court, after hearing the parties on the motion, ordered the Commissioner to file amended answers on or before November 30, 1955, setting forth the items comprising the unreported income and the facts *156 relied upon to support the fraud charges or show cause why the proceedings should not be dismissed as to the fraud issues. The Commissioner thereafter filed amendments to his answers, alleging for the first time that the increases were shown in a net worth statement attached to each amendment. The orders to show cause were discharged. The petitioners thereafter argued, and the Court agreed, that the net worth statement attached to the amendments to the answers was not a sufficient compliance with the order of the Court in that large amounts were lumped in several categories and no information was given of what made up the total amount in each category. The Court, in order to make its requirements clear to the Commissioner, issued new orders directing the Commissioner to file amended answers on or before March 28, 1956, breaking down the categories by identifying the separate items included in each and giving the amount which related to each item or show cause why the amendments to the answers should not be stricken. The return date was extended on motions of the Commissioner to May 23, 1956 for reasons which now appear inadequate. Amended answers were filed on that date and the question *157 is do they comply with the order to show cause. Paragraph 9(d) of the amended answer here in question in the case of Grace Licavoli, Docket No. 58055, which is typical of the other two, is as follows: (d) That an analysis of the net worth and expenditures of petitioner and her husband, Peter Licavoli, for said taxable year reveals annual increases in net worth and taxable income as shown in Exhibit I. Petitioner fraudulently understated her net income in the amount of $17,691.92, as shown in the attached Exhibit I. Exhibit I referred to therein exactly duplicates those previously filed as a part of the prior amended answers and is as follows: STATEMENT OF NET WORTH AND EXPENDITURES OF
PETER AND GRACE LICAVOLI
ASSETS AT COST
12-31-46
12-31-47
12-31-48
12-31-49
Bank balances
$ 2,004.97
$ 4,657.08
$ 14,251.28
$ 4,662.64
U.S. Government bonds
7,593.75
7,593.75
7,668.75
11,531.25
Stocks
15,657.45
15,657.45
15,657.45
30,370.00
Automobiles
3,046.26
5,164.26
3,125.06
4,216.19
Personal property
9,250.00
22,875.00
23,000.00
20,250.00
Real estate
71,354.66
135,301.63
150,202.90
166,533.57
Mortgages and receivables
6,487.53
32,917.00
33,418.00
Business investments
52,621.06
44,898.14
12,787.79
14,174.75
Total Assets
$168,015.68
$236,147.31
$259,610.23
$285,156.40
Less accumulated depre-
ciation
1,060.00
2,120.00
Adjusted Total Assets
$168,015.68
$236,147.31
$258,550.23
$283,036.40
LIABILITIES
Mortgages, land contracts, loans
$ 59,793.24
$ 60,059.48
$ 46,495.67
$ 36,633.90
Net Worth
$108,222.44
$176,087.83
$212,054.56
$246,402.50
Annual increase in net $ 67,865.39
$ 35,966.73
$ 34,347.94
worth
Add: Personal living
22,828.70
22,923.23
30,820.58
expenses
Hobby racing horses
7,727.12
7,345.18
6,126.42
Income taxes paid
17,362.79
6,345.00
11,901.71
Total Income
$115,784.00
$ 72,580.14
$ 83,196.65
Plus or minus long-term
10,227.65
545.77
gains
Taxable Income
$115,784.00
$ 62,352.49
$ 82,650.88
Less income reported on individual return of
9,750.00
Grace Licavoli
Less income reported on
individual return of 27,066.68
Peter Licavoli
Net income reported on 52,041.60
30,129.29
joint returns
Understatement of Grace $ 17,691.92
Licavoli
Understatement of Peter
61,275.40
Licavoli
Total understatement of Peter and Grace Licavoli
$ 78,967.32
$ 10,310.89
$ 52,521.59
STATEMENT OF NET WORTH AND EXPENDITURES OF
PETER AND GRACE LICAVOLI
EXHIBIT I
ASSETS AT COST
12-31-50
12-31-51
Bank balances
$ 9,013.17
$ 80,454.45
U.S. Government bonds
11,626.00
12,056.25
Stocks
33,797.44
41,997.44
Automobiles
10,590.57
6,894.04
Personal property
35,875.00
30,844.40
Real estate
191,431.39
281,762.15
Mortgages and receivables
33,765.60
43,272.04
Business investments
16,196.72
28,920.69
Total Assets
$342,295.89
$526,201.46
Less accumulated depre-
ciation
3,495.75
5,248.82
Adjusted Total Assets
$338,800.14
$520,952.64
LIABILITIES
Mortgages, land contracts, loans
$ 26,105.37
$ 76,559.43
Net Worth
$312,694.77
$444,393.21
Annual increase in net $ 66,292.27
$131,698.44
worth
Add: Personal living
26,773.10
21,628.26
expenses
Hobby racing horses
6,288.75
22,295.20
Income taxes paid
7,219.96
29,511.31
Total Income
$106,574.08
$205,133.21
Plus or minus long-term
(920.98)
gains
Taxable Income
$107,495.06
$205,133.21
Less income reported on individual return of
Grace Licavoli
Less income reported on
individual return of Peter Licavoli
Net income reported on 33,392.72
43,143.36
joint returns
Understatement of Grace Licavoli
Understatement of Peter
Licavoli
Total understatement of Peter and Grace Licavoli
$ 74,102.34
$161,989.85
*158 The net worth method upon which the Commissioner proposes to rely in his effort to prove fraud is one frequently used by him for that purpose. That method is to show by competent evidence the total assets and liabilities of the taxpayer at the beginning of the first taxable year and at the end of each taxable year, in order to disclose an increase in net worth for each year which, when added to the non-deductible expenditures of the year, exceeds the reported net income for that year, from which the conclusion might be reached that the understatement of taxable income was due to fraud with intent to evade tax. One of the purposes of the Rules of the Court referred to above is to bring about an orderly, fair and time-conserving disposition of the issues. The taxpayer, for example, may have the fraud issues dismissed under that rule if a cause of action is not adequately pleaded by the Commissioner in his answer. Furthermore, the taxpayer is entitled to know what the facts are upon which the Commissioner relies to prove fraud so that he can prepare his defense and not be taken by surprise, and it is essential that the facts be pleaded in sufficient detail that each allegation may *159 be admitted or denied and the area of disagreement as to the facts reduced in that fashion to a minimum, thus conserving the time, effort and expense of all concerned, including the Court. This is particularly true in Tax Court pleadings, since no discovery or pre-trial procedure is expressly provided under which the taxpayer might gain the same information which is sought here. [1] Proper pleading and the factual detail necessary will vary with circumstances, and excessive detail should be avoided, but here the Commissioner has refused to break down any category shown in his net worth statement. The Court, after hearing the parties fully in these matters, was and still is impressed with the petitioners' argument that they need and should have further information in regard to the net worth facts upon which the Commissioner will rely in support of the fraud issues, to enable them to plead properly (to admit those items, once identified, which they owned or acquired *160 during the period, and to deny the ownership of the others) and to prepare for the trial of these proceedings. It therefore, in the exercise of its discretion, ordered the Commissioner to plead the alleged items going to make up the net worth statement in greater detail. He has not been required to plead his evidence in support of the facts, and the Court does not expect or desire pleading of his evidence. The category of Real Estate will suffice to demonstrate the attitude of the Court. The alleged cost of real estate at the beginning of the first taxable year is $71,354.66 and at the end of the last taxable year is $281,762.15, an increase of $210,407.49. Those totals, and the totals of each of the intervening years, obviously must consist of several pieces of real property having various costs. If the Commissioner had merely identified each and had indicated the cost which he attributed to it, the taxpayers could then make proper admissions and denials and could prepare to defend against the fraud allegations at the trial. The pleading of those factual details would not unduly burden the record but would merely set forth the facts which the Commissioner will ultimately have to prove *161 if he is to succeed on these issues where he has the burden of proof. Thus the orders of the Court requiring those pleadings were not improper, would not produce any injustice but on the contrary were appropriate to make the pleadings the effective medium they are intended to be, and, since the Commissioner has refused to comply with the orders, the Court has no alternative but to make the orders absolute by striking the Commissioner's pleadings relating to the net worth statement and method. Counsel for the Commissioner objected at one time that the more detailed allegations would give the taxpayers information to which they were not entitled in a contemplated criminal action in the United States District Court, and would enable them to procure false rebuttal evidence. This Court must confine itself to its own problems. It can not assume that the taxpayers will commit a crime in defending themselves here. The Commissioner further argues that the net worth method is merely a method of presenting evidence of income of taxpayers and he has done all that can be required of him when he states that he will use that method to sustain his burden of proof on the two fraud issues in these *162 cases. If that were sound it would mean that no real benefit could be obtained from the Rules of the Court requiring adequate pleadings. Taxpayers in net worth cases frequently have admitted most of the items of net worth and the controversy and proof narrows to a few contested items. Such potential benefits should not be lost at the pleading stage of the proceedings. The Commissioner refers to the petitioners' burden of proof to disprove the deficiencies, but the matter before the Court involves only issues on which the Commissioner has the burden of proof. The taxpayers would not need to assume their burden as to the deficiencies if the Commissioner did not prove that the returns were false and fraudulent so as to avoid the statute of limitations on assessment and collection. The Commissioner has not advanced any argument which convinces the Court that the orders should not be enforced. Footnotes
1. The Tax Court conducts pre-trial conferences where situations seem to justify such procedure, but has refrained from adopting any general rule on the subject in the light of its experience and methods of operation.↩